SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

APEX MARITIME CO., INC. d/b/a Apex Shipping Co.
and APEX SHIPPING CO. (NYC), INC.,

                 Plaintiffs,

    -against-

FURNITURE, INC. and THOMAS CORRALES,

                 Defendants.

------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ **NOV 0 2 2011** ★

**BROOKLYN OFFICE**

**Case No.**

**ECF CASE**

**COMPLAINT** VITALIANO, J.
Reyes M.

**11 - 5365**

    Plaintiffs, APEX MARITIME CO., INC. d/b/a Apex Shipping Co. and APEX SHIPPING

CO. (NYC), INC. (hereafter collectively "APEX"), by its undersigned attorneys, as and for its

Complaint against defendants, FURNITURE, INC. and THOMAS CORRALES, state and allege

as follows:

## THE PARTIES

    1.    Plaintiff, APEX MARITIME CO., INC. d/b/a Apex Shipping Co. is a corporation

duly organized under the laws of the State of California with its principal place of business

located at 206 Utah Ave., San Francisco, CA 94080.

    2.    Plaintiff, APEX SHIPPING CO. (NYC), INC. is a corporation duly organized

under the laws of the State of New York, authorized to do business in the State of New York,

with its principal place of business at 1 Cross Island Plaza, Suite 113, Rosedale, NY 11422.

    3.    Defendant FURNITURE, INC. is a corporation duly organized under the laws of

the State of New York with its principal place of business and address for service of process

located at 129 48th Street, Brooklyn, New York 11232.

    4.    Defendant THOMAS CORRALES (hereafter "CORRALES") is a natural person

with a residence at 796 Harmony Road, Jackson, New Jersey 08527. Corrales also is an officer,

director and/or employee of FURNITURE, INC., and at all material times herein was involved in the transactions set forth below and personally benefited thereby.

## JURISDICTION AND VENUE

5.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and the Ocean Shipping Reform Act of 1999, 46 U.S.C. App. Section 1701, *et seq*, whereby this Court's admiralty jurisdiction is invoked.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as the action arises under a law of the United States.

7.      This Court additionally has supplemental jurisdiction over the claims against CORRALES pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), inasmuch as defendant FURNITURE, INC. can be found within this district..

## AS AND FOR A FIRST CLAIM FOR RELIEF
## AGAINST DEFENDANT FURNITURE, INC.
### (Breach of Contract)

9.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 8 of this Complaint as if more fully set forth herein at length.

10.      On or about the dates and at the ports of shipment stated in Schedule A below, certain goods were delivered to Plaintiffs to be carried to the ports of destination, to perform related shipping services for the ocean transport of the subject goods to the United States from ports in China and Vietnam, to perform services related to the importation, exportation and customs clearance of the goods into the United States, and to deliver the subject goods to the named consignees. Plaintiff APEX MARITIME CO., INC. d/b/a/ Apex Shipping Co. issued an ocean bill of lading for each shipment.

**Schedule A.**

| Date | Bill of Lading No. | Port of Loading | Port of Discharge | Amount Due |
|---|---|---|---|---|
| 6/30/2010 | E100638343 | Xiamen, China | New York, NY | $2,835.30 |
| 7/12/2010 | E100738117 | Xiamen, China | New York, NY | $15,093.40 |
| 6/30/2010 | E100638344 | Xiamen, China | Baltimore, MD | $5,785.84 |
| 7/14/2010 | E100738123 | Xiamen, China | New York, NY | $9,996.48 |
| 7/16/2010 | E100738227 | Xiamen, China | New York, NY | $4,753.74 |
| 7/17/2010 | E1007541106 | Ningbo, China | Elizabeth, NJ | $4,766.90 |
| 7/24/2010 | E100738320 | Xiamen, China | New York, NY | $20,048.02 |
| 7/25/2010 | E1007541099 | Ningbo, China | Elizabeth, NJ | $4,870.41 |
| 7/13/2010 | E100738169 | Xiamen, China | Jacksonville, FL | $5,927.39 |
| 8/8/2010 | E1008541001 | Ningbo, China | Elizabeth, NJ | $5,120.41 |
| 8/15/2010 | E100838184 | Xiamen, China | Boston, MA | $6,078.40 |
| 8/17/2010 | E100838186 | Xiamen, China | Baltimore, MD | $6,185.22 |
| 9/7/2010 | E100938028 | Xiamen, China | New York, NY | $5,172.73 |
| | | | **Total Due** | **$96,634.24** |

11.     Defendant FURNITURE, INC. agreed to pay all freight and related shipping charges for the ocean transportation and ancillary related shipping services performed by Plaintiffs in connection therewith, as contemplated by the Apex bills of lading forming the agreement between the parties, as set forth in Schedule A above.

12.     Also pursuant to the agreement between the parties, Plaintiffs advanced monies on behalf of Defendant FURNITURE, INC. to pay duties, taxes, fees, storage, transportation and

3

other related shipping charges to, *inter alia*, companies appointed by Plaintiffs to perform the aforementioned ocean carriage and transportation related services.

13.     Thereafter, the said goods were transported to the ports of destination and delivered to the consignee and/or its agents under each bill of lading, and Plaintiffs performed all acts required to be performed on their part in that regard, pursuant to the agreement of the parties.

14.     For all shipments evidenced by the Apex bills of lading referenced in Schedule A above, the total amount due and owing from Defendant FURNITURE, INC., amounts to $96,634.24.

15.     Despite due demand, Defendant FURNITURE, INC. has failed and refused, and continues to fail and to refuse, to remit payment of the sums currently due and owing in the amount of $96,634.24.

16.     Pursuant to the terms of the ocean bills of lading issued by Plaintiff APEX MARITIME CO., INC. d/b/a/ Apex Shipping Co., Plaintiffs are additionally entitled to recover all costs associated with the pursuit of this claim, including but not limited to their reasonable attorneys' fees in this legal action, as their interests may appear.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**AGAINST DEFENDANT FURNITURE, INC.**
**(Unjust Enrichment)**

17 .     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 16 of this Complaint as if more fully set forth herein at length.

18.     Defendant FURNITURE, INC. received and was unjustly enriched from the receipt of valuable shipping services in the sum of $96,634.24.

4

19.     Despite due demand therefore, Defendant has failed to remit said sum and Plaintiffs have therefore been damaged in the sum of $96,634.24, along with attorney's fees and costs in the pursuit of this claim.

## AS AND FOR A THIRD CLAIM FOR RELIEF
## AGAINST DEFENDANT FURNITURE, INC.
### (Account Stated)

20.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 19 of this Complaint as if more fully set forth herein at length.

21.     Plaintiffs submitted statements of account to the Defendant FURNITURE, INC. totaling the sum of $96,634.24.

22.     Defendant FURNITURE, INC. accepted Plaintiffs' statements of account without objection or question.

23.     No part of the sum of $96,634.24 has been paid, despite due demand therefore.

24.     There is presently due and owing from the Defendant FURNITURE, INC. to the Plaintiffs the sum of $96,634.24.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
## AGAINST DEFENDANT CORRALES
### (Personal Guarantee)

25.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 24 of this Complaint as if more fully set forth herein at length.

26.     On or about September 16, 2010, Defendant Corrales executed a Continuing Commercial Guarantee, under which he personally guaranteed the full and punctual payment, performance and satisfaction of the indebtedness of Defendant Furniture, Inc. to Apex.

27.     Annexed hereto as Exhibit "1" is a true and correct copy of the Continuing Commercial Guarantee executed by Defendant Corrales, and by this reference expressly incorporated herein.

28.     The Guarantee executed by Defendant Corrales guarantees and holds Defendant Corrales liable for the indebtedness in connection with all shipments evidenced by the Apex bills of lading referenced in Schedule A above, in the total amount of $96,634.24.

29.     Despite due demand, Defendant Corrales has failed and refused, and continues to fail and to refuse, to remit payment of the sums currently due and owing in the amount of $96,634.24.

30.     Pursuant to the terms of the Continuing Commercial Guarantee, Plaintiffs are additionally entitled to recover all costs associated with the pursuit of this claim, including but not limited to their reasonable attorneys' fees in this legal action, as their interests may appear.

*WHEREFORE*, Plaintiffs APEX MARITIME CO., INC. d/b/a Apex Shipping Co. and APEX SHIPPING CO. (NYC), INC. demand judgment against Defendants, jointly and severally, on their Claims herein as follows:

1)     On the First Claim for Relief in the sum of $96,634.24, or as proven at trial, along with an award of attorney's fees;

2)     On the Second Claim for Relief in the sum of $96,634.24, or as proven at trial, along with an award of attorney's fees;

3)     On the Third Claim for Relief in the sum of $96,634.24, or as proven at trial, along with an award of attorney's fees;

4)     On the Fourth Claim for Relief in the sum of $96,634.24, or as proven at trial, along with an award of attorney's fees;

6

5)     As to all claims for relief, pre- and post-judgment interest, costs, disbursements, and any further relief to which this Court seems just, proper, or equitable.

Dated: New York, New York
       November 2, 2011

KAPLAN, MASSAMILLO & ANDREWS, LLC

By _____

Nicholas E. Pantelopoulos (NP-4969)
Jennifer Huang (JH- 4532)
70 E. 55th Street, 25th Fl.
New York, New York 10022
(212) 922-0450

Attorneys for Plaintiffs
***APEX MARITIME CO., INC.***
***and APEX SHIPPING CO. (NYC), INC.***

Recycled    Stock # R-EX-5-B

## CONTINUING COMMERCIAL GUARANTEE

**DEBTOR:**
Furniture Inc.

**DATE: September 16, 2010**

**GUARANTOR:**
Tom Corrales
796 Harmony Road
Jackson, NJ 08527

**CREDITOR ("APEX"):**
Apex Maritime Co., Inc.
Apex Shipping Co. (NYC) Inc.

**CONTINUING GUARANTEE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Debtor to APEX, and the performance and discharge of all Debtor's obligations thereunder. This is a guaranty of payment and performance and not of collection, so APEX can enforce this Guaranty against Guarantor even when APEX has not exhausted APEX's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to APEX or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Debtor's obligations in relation to the Indebtedness. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Debtor individually or collectively or interchangeably with others, owes or will owe APEX. 'Indebtedness' includes, without limitation, freight, handling charges, customs duties, charges for demurrage or detention, and all balances on invoices, whenever issued. "Indebtedness" shall include any and all of the aforesaid, even if barred, voidable or unenforceable against Debtor for any reason whatsoever. In the event of a bankruptcy proceeding for the protection of Debtor, Guarantor's obligations under this Guaranty include all amounts paid to Creditor by Debtor that are later recovered from Creditor in the bankruptcy proceeding, whether by judgment or compromise.

**CUMULATIVE RIGHTS.** If APEX presently holds one or more guaranties, or hereafter receives additional guaranties with respect to the Indebtedness, APEX's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other guaranties executed by Guarantor.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR GUARANTEES THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF DEBTOR TO APEX, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN THOUGH THE OUTSTANDING INDEBTEDNESS MAY AT TIMES BE A ZERO BALANCE

**DURATION OF GUARANTY.** This Guaranty will take effect when received by APEX without the necessity of any acceptance by APEX, or any notice to Guarantor or to Debtor, and will continue in full force until all the Indebtedness incurred or contracted before receipt by APEX of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may

only do so in writing. Guarantor's written notice of revocation must be mailed to APEX, by certified mail, at APEX's address listed above or such other place as APEX may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by APEX of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is incurred by Debtor prior to revocation, or incurred under a commitment that became binding before revocation. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of APEX's actual notice of Guarantors death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation APEX receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. Guarantor's obligations under this Guaranty shall be in addition to any of Guarantor's obligations under any other guaranties of the Indebtedness heretofore or hereafter given to APEX unless such other guaranties are modified or revoked in writing. Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars, shall not terminate this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**OBLIGATIONS OF MARRIED PERSONS.** Any married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property.

**GUARANTOR'S AUTHORIZATION TO APEX.** Guarantor authorizes APEX, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) to extend additional credit to Debtor; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness; (C) to take and hold security for the payment of the Indebtedness, and exchange, enforce, apply, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) any one or more of the other Guarantors with respect to the Indebtedness, if any (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to sell, transfer, or assign all or any part of the Indebtedness; and (G) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to APEX that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Debtor's request and not at the request of APEX; (C) Guarantor has full power, right and authority to enter into this Guaranty and the execution of this Guaranty by any person on behalf of Guarantor has been duly authorized by Guarantor; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of APEX, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon APEX's request, Guarantor will provide to APEX financial and credit information in form acceptable to APEX, and all such financial information which currently has been, and all future financial information which will be provided to APEX is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to APEX and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) APEX has made no representation to Guarantor as to the creditworthiness of Debtor; and (J) Guarantor has established adequate means of

obtaining from Debtor on a continuing basis information regarding Debtor's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information made by Guarantor, APEX shall have no obligation to disclose to Guarantor any information or documents acquired by APEX in the course of its relationship with Debtor; (K) Guarantor is a shareholder, director, officer, or person in control of Debtor, or a relative of such person; and (L) Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require APEX to: (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Debtor or any other guarantor or surety, any action or nonaction taken by Debtor, APEX, or any other guarantor or surety of Debtor, or the creation of new or additional Indebtedness; (B) proceed against any person, including Debtor, before proceeding against Guarantor; (C) proceed against any collateral for the Indebtedness, including Debtor's collateral, before proceeding against Guarantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice to Guarantor of the terms, time, and place of any sale of collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Debtor, the collateral, or any other guarantor or surety, or about any action or nonaction of APEX; or (G) pursue any remedy or course of action in APEX's power whatsoever. Guarantor hereby waives any and all rights or defenses arising by reason of: (H) any disability or other defense of Debtor, any other guarantor or surety or any other person; (I) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (J) any act or omission by APEX which directly or indirectly results in or contributes to the discharge of Debtor or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (K) any statute of limitations in any action under this Guaranty or on the Indebtedness; or (L) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the extension or other change in the time payment of the Indebtedness is due and any change in the interest rate applied to the Indebtedness, and including any such modification or change in terms after revocation of this Guaranty on the Indebtedness incurred prior to such revocation. Guarantor hereby (M) waives: all rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive, and analogous provisions of any other state's laws as may be found to be applicable; .and (N) all rights and any defenses arising out of an election of remedies by APEX even though the election of remedies has destroyed Guarantor's rights of subrogation and reimbursement against Debtor.

**Guarantor's Understanding With Respect To Waivers.** Guarantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Guarantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by laws of suretyship and guaranty, and the Uniform Commercial Code. Guarantor acknowledges that APEX has provided these waivers of rights and defenses with the intention that they be fully relied upon by APEX. Guarantor further understands and agrees that this Guaranty is a separate and independent contract between Guarantor and APEX, given for full and ample consideration, and is enforceable on its own terms. Until all of the Indebtedness is paid in full, Guarantor waives any right to enforce any remedy Guarantor may have against the Debtor or any other guarantor, surety, or other person, and further, Guarantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by APEX. Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law, If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall remain effective to the fullest extent permitted by law or public policy.

**Subordination of Debtor's Debts to Guarantor.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Debtor, whether or not Debtor becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Debtor, upon any account whatsoever, to any claim

that APEX may now or hereafter have against Debtor. In the event of insolvency, bankruptcy, assignment for the benefit of creditors, or voluntary liquidation, the assets of Debtor applicable to the payment of the claims of both APEX and Guarantor shall be paid to APEX and shall be first applied by APEX to the Indebtedness. Guarantor does hereby assign to APEX all claims which it may have or acquire against Debtor or against any assignee or trustee in bankruptcy of Debtor; provided however, that such assignment shall be effective only for the purpose of assuring to APEX full payment in legal tender of the Indebtedness, and agrees not to submit any claim that Guarantor may have under Section 101 of Title 11 of the United States Bankruptcy Code. If APEX so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Debtor to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to APEX. Guarantor agrees, and APEX is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as APEX deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**Miscellaneous Provisions.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees.** If any proceeding is brought for the enforcement of this Guaranty, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Guaranty, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees (without regard to any fee schedule then in effect in whatever forum said action may be filed) and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law and Forum.** This Guaranty will be governed by the laws of the State of California without regard to its conflicts of law provisions. In the event of a dispute, legal action shall be brought in the Superior Court for the County of San Francisco, California, and Guarantor hereby waives any objection to jurisdiction in such court.

**Interpretation.** In all cases where there is more than one Debtor or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Debtor named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words 'Debtor' and 'Guarantor' respectively shall mean all and any one or more of them. The words "Guarantor," 'Debtor," and "APEX" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, the remaining provisions shall not be affected.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to APEX as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep APEX informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by APEX to any Guarantor is deemed to be notice given to all Guarantors.

28594_1.DOC 9/16/2010 11:53:15 AM

**No Waiver By Apex.** APEX shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by APEX. No delay or omission on the part of APEX in exercising any right shall operate as a waiver of such right or any other right. A waiver by APEX of a provision of this Guaranty shall not prejudice or constitute a waiver of APEX's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by APEX, nor any course of dealing between APEX and Guarantor, shall constitute a waiver of any of APEX's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of APEX is required under this Guaranty, the granting of such consent by APEX in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of APEX.

**Successors And Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO APEX AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY APEX IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

AS USED IN THIS GUARANTY, "DEBTOR" SHALL REFER TO FURNITURE INC..

THE UNDERSIGNED GUARANTOR ACKNOWLEDGES AND CONFIRMS AS CORRECT THE AMOUNTS SHOWN ON THE STATEMENTS OF ACCOUNT PREPARED BY APEX ON SEPTEMBER 16, 2010 FOR DEBTOR, TOTALING ONE HUNDRED SIXTY THOUSAND NINE HUNDRED THIRTY-ONE DOLLARS AND TWENTY-NINE CENTS ($160,931.29).

GUARANTOR:

Tom Corrales

[Signature]